**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**ORANGE BARREL MEDIA, LLC,**

   **Plaintiff,**

          **Case No. 2:21-cv-4988**
  **v.**        **JUDGE EDMUND A. SARGUS, JR.**
          **Magistrate Judge Elizabeth Preston Deavers**

**KR SUNSET WEHO, LLC,**

   **Defendant.**


**OPINION AND ORDER**

   This matter is before the Court on Defendant KR Sunset WeHo, LLC's Motion to Dismiss the Amended Complaint. (ECF No. 12.) For the following reasons, the motion is **GRANTED in part and DENIED in part**.

**I. BACKGROUND**

   This case concerns a Sales and Management Agreement between Kilroy Realty Sunset WeHo, LLC ("KR") and Orange Barrel Media ("OBM"). Plaintiff OBM creates and manages advertising signage. (Am. Compl. ¶ 2, ECF No. 10.) Defendant KR owns and operates real estate developments, including a development on Sunset Boulevard in West Hollywood, California (hereinafter, "The Sunset"). (*Id.* ¶¶ 4, 5.)

   According to the Amended Complaint, OBM and KR entered into an agreement (hereinafter, the "Agreement") on March 8, 2019, in which OBM would manage existing and future advertising signs at The Sunset for KR (hereinafter, the "Signs"). (*Id.* ¶¶ 6, 12.) Under the Agreement, for fifteen years thereafter, OBM would be the "sole agent to market and procure advertising contracts for the display of advertising material on the Signs" and would have the "sole

1

and exclusive right to manage and control the operations of the Signs, including the right to display and project advertisements thereon." (Agreement ¶ 2, ECF No. 1-1.) KR agreed to "cooperate with OBM to ensure that OBM can manage and operate the Signs and display and project advertisement thereon remotely." (*Id.* ¶ 4.5.) In exchange, OBM agreed to pay KR 72.5% of the advertising revenue generated from the Signs. (*Id.* ¶ 5.3.)

Pursuant to the Agreement, OBM began converting KR's existing rooftop signage into advertising signage and worked to secure permits for new signage at The Sunset. (Am. Compl. ¶¶ 19–20.) OBM and KR worked with an architect and designer to prepare two sign projects. (*Id.* ¶¶ 25, 27, 28.) OMB assisted KR with the sign projects in anticipation that it would have the sole and exclusive right to display advertisements on those two signs and any other advertising Signs at The Sunset. (*Id.* ¶ 31.)

Approximately one year after entering the Agreement, in early to mid-2020, KR approached OBM about renegotiating terms of the Agreement. (*Id.* ¶ 32.) The parties did not agree upon amendment terms. (*Id.* ¶ 33.) KR stopped communicating with OBM in February 2021. (*Id.* ¶ 34.) On September 24, 2021, KR notified OBM of its decision to unilaterally rescind the Agreement on the alleged basis that it was void and had no force or effect. (*Id.* ¶ 37.)

OBM filed this action on October 8, 2021, asserting that KR violated the Agreement by denying OBM the sole and exclusive right to manage and control the operations of the Signs. (*Id.* ¶ 38.) OBM asserts five counts in its Amended Complaint: declaratory relief, breach of contract (monetary damages), breach of contract (specific performance), promissory estoppel, and unjust enrichment. KR filed the instant motion to dismiss all claims. (ECF No. 12.) OMB filed a response in opposition to the motion (ECF No. 16) and KR filed a reply (ECF No. 21). The motion is ripe for review.

## II.   STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining this, a court must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin., Corp.*, 281 F.3d 613, 619 (6th Cir. 2007). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it][is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 677–79 (quoting *Twombly*, 550 U.S. at 556) (internal quotations omitted).

## III.   ANALYSIS

Defendant moves to dismiss this action on the basis that the Agreement is not a valid contract, and even if it is a valid contract, the Amended Complaint fails to state a claim for which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

### A.  Valid Contract

To bring a breach of contract claim under Ohio law, plaintiffs must prove four elements: "(1) the formation of a binding contract or agreement; (2) the nonbreaching party performed its obligations under the contract; (3) the defendant failed to fulfill its obligations without a legally valid excuse; and (4) the nonbreaching party suffered damages." *Capital Equity Grp. v. Ripken Sports Inc.*, 744 F. App'x 260, 262–63 (6th Cir. 2018) (citing *Carbone v. Nueva Constr. Grp., L.L.C.*, 2017-Ohio-382, 83 N.E.3d 375 (8th Dist.)). The first element—formation of a binding contract—requires that the contract contain "sufficiently definite terms" and "the essential

3

elements of the bargain." *Id.*; *Ruffian, L.L.C. v. Hayes*, 10th Dist. Franklin No. 09AP-948, 2011-Ohio-131. Defendant argues that the Agreement is not a valid contract because it lacks sufficiently definite terms and essential elements. (Defendant's Mot. to Dismiss at 3, ECF No. 12, hereinafter "Def.'s Mot.".) The arguments are based on the following paragraph of the Agreement:

> [KR] desires to contract with OBM to market and manage certain static and digital signs (each a "Sign" and collectively, the "Signs") now existing or to be located on certain buildings located within that certain development commonly referred to as "The Sunset" and located at the intersection of Sunset Boulevard and Alta Loma Road in West Hollywood, California, the location of which Signs are shown on Exhibit A. . .

(Agreement at 1.)

Defendant contends that the Agreement lacks essential elements and contains indefinite terms because it gives OBM the right to manage "certain" signs, and thus not *all* signs, "now existing or to be located on certain buildings" at The Sunset. The parties agree that Exhibit A to the Agreement would specify the location and design of the Sign. Exhibit A is currently blank except for the title, "Depiction of the Signs." Because Exhibit A does not yet list any Signs, Defendant argues that the Agreement does not include essential elements of the bargain such as how many Signs the Agreement covered, where they were located, and if they existed yet at the time of the alleged breach. Defendant asserts that the Agreement is unenforceable because it is impossible to determine an appropriate remedy without knowing how many and which Signs the parties intended to be covered by the Agreement. (Def.'s Mot. at 4.)

Plaintiff responds that the Agreement alone contains the essential elements of the bargain and the omission of Exhibit A does not render the Agreement uncertain or unenforceable. Plaintiff contends that Exhibit A was not meant to be part of the binding contract but instead a guidance document used by the parties and altered throughout the contractual relationship.

4

The essential elements in a contract include the parties to the contract, offer, acceptance, contractual capacity, consideration, mutual assent, and legality. *Capital Equity Grp*., 744 F. App'x at 263; *Perlmuter Printing Co. v. Strome, Inc.*, 436 F. Supp. 409, 410 (N.D. Ohio 1976). The Agreement lists the parties, OBM's offer to develop and manage Signs at The Sunset, and KR's acceptance of the offer as evidenced by its Senior Vice President and Retail Development and Curation Manager's signatures. (*See* Agreement at 11.) The Agreement contains the subject matter of the contract, stating "[KR] desires to contract with OBM to market and manage certain static and digital signs (each a "Sign" and collectively, the "Signs") now existing or to be located" at The Sunset. (Am. Compl. Ex. B, at 1). KR gives OBM the "sole and exclusive right to manage and control the operations of the Signs, including the right to display and project advertisements thereon." (Agreement §4.5.) In exchange, OBM agrees to pay KR an amount equal to 72.5% of the Advertising Revenue generated on the Signs and assist KR in obtaining necessary approvals for sign construction and conversion. (Agreement §§ 4.5 & 5.3.) Reading the Agreement in a light most favorable to OBM, the Agreement contains the essential elements of a contract.

KR cites two cases in support of its contention that the Agreement lacks essential elements of the bargain because Exhibit A does not yet contain pictures and locations of Signs. Both cases, however, are dissimilar. In *Sabatine BK Dev., LLC v. Fitzpatrick Enter., Inc.*, an Ohio Court of Appeals found that a real estate contract did not contain an essential element of the bargain because it lacked a specific description of the property to be transferred. 2017-Ohio-805, 85 N.E.3d 1127 (5th Dist.). Similarly, in *Griffin v. Griffin*, a real estate contract missing an exhibit that described the property was invalid because it lacked essential elements. 12th Dist. Butler No. CA2003–03–076, 2004 WL 292087, at *2, 2004-Ohio-698. Certainly, in the real estate context, a contract to sell land is invalid if the boundaries and location of the land are indefinite or absent in the

agreement. Here, in contrast, a specific description of each current and future advertising sign at The Sunset is not necessary to enforce an agreement concerning who has the right to manage signs at The Sunset. Especially if the phrase "certain signs" is read in a light favorable to Plaintiff as "all signs" at The Sunset. Furthermore, Defendant's assertion that specific signs must be identified in the Agreement is illogical given the parties' intent to be bound for future Signs that did not yet exist and were not yet designed. Therefore, reading the Amended Complaint and Agreement in a favorable light to Plaintiff, the Court finds that the specific locations and pictures of Signs were not essential elements. The Agreement, alone, contains the essential elements of the bargain.

For similar reasons, the Agreement's terms are sufficiently definite. The terms of a contract are reasonably definite if it provides a basis for determining the existence of a breach and identifies an appropriate remedy. *Mr. Mark Corp. v. Rush, Inc.*, 11 Ohio App.3d 167, 169, 464 N.E.2d 586 (8th Dist. 1983); *Capital Equity Grp.*, 744 F. App'x at 263 (quoting *In re Estate of Bohl*, 2016-Ohio-637, 60 N.E.3d 511 (12th Dist.)). The Agreement gives OBM the sole and exclusive right to manage and control the operations of Signs at The Sunset. Breach occurred if KR did not allow OBM to manage and control operations of Signs at The Sunset. In that case, OBM might be entitled to receive revenue from the Signs as a remedy. The Court finds sufficient allegations that the Agreement was a valid contract.

### B. Breach of Contract (Monetary Damages)

A breach of contract claim under Ohio law includes four elements: (1) "a binding contract"; (2) the nonbreaching party performed its contractual obligations; (3) "breach"; and (4) "damages." *Capital Equity Grp.*, 744 F. App'x at 262–63. Defendant argues that Plaintiff does not sufficiently allege the third and fourth elements—breach and damages. (Def.'s Mot. at 6, 8.)

6

First, the Amended Complaint sufficiently alleges that KR breached the terms of the Agreement. It is well established that terminating or rescinding a contract constitutes breach of the contract. *Hopkins v. Car Go Self Storage*, 2019-Ohio-1793, 135 N.E.3d 1229 (10th Dist.) (noting that a party breaches the contract if it "refus[es] to recognize the existence of the contract or the do[es] of something inconsistent with its existence"). KR concedes that it stopped communicating with OBM for a few months, sought approval for signs without involving OBM, and sent OBM a notice of termination of the Agreement on the alleged basis that it was void and no longer in force or in effect. (Def.'s Mot. at 11; Am. Compl. ¶ 37.)

Second, the Amended Complaint sufficiently alleges that OBM suffered damages as a result of the breach. A plaintiff sufficiently alleges damages by providing a plausible basis that the defendant could be liable to the plaintiff for damages. *Miami Valley Mobile Health Servs.*, 852 F. Supp. 2d at 943. Here, the Amended Complaint states "as a direct and proximate result of Kilroy's breach, OBM has suffered and continues to suffer damages." (Am. Compl. at ¶ 52.) Plaintiff alleges that it worked with KR without compensation to design signs and obtain permits in anticipation that it would manage those signs and other signs. Plaintiff further alleges that it would have received future profits from managing the Signs. This adequately puts Defendant on notice that OBM seeks damages for its past work and for future losses connected to the terms of the Agreement. Thus, Plaintiff has provided a plausible basis on which KR is liable for damages. Plaintiff has adequately alleged both breach of contract and damages. Defendant's motion to dismiss this claim is denied.

### C. Breach of Good Faith and Fair Dealing

"In Ohio, 'public policy dictates that every contract contain an implied duty for parties to act in good faith and to deal fairly with each other.'" *Fifth Third Mortg. Co. v. Chicago Title Ins.*

*Co.*, 758 F. Supp. 2d 476, 485 (S.D. Ohio 2010) (quoting *Littlejohn v. Parrish*, 163 Ohio App.3d 456, 2005-Ohio-4850, 839 N.E.2d 49 (1st Dist.)). A claim of a breach of good faith and fair dealing "is part of a contract claim and does not stand alone." *Lakota Local Sch. Dist. Bd. of Educ. v. Brickner*, 108 Ohio App.3d 637, 647, 671 N.E.2d 578 (6th Dist.1996); *see also Patrick v. CitiMortgage, Inc.*, 676 F. App'x 573, 577 (6th Cir. 2017) ("Ohio law recognizes only a breach of contract claim; it does not recognize a free-standing or independent claim for breach of the covenants of good faith and fair dealing.").

Although the Amended Complaint does not list a specific count for breach of good faith and fair dealing, one paragraph states that KR "breached and continues to breach the duty of good faith and fair dealing by engaging in the conduct described herein." Defendant argues that it is a separate claim. It moves to dismiss Plaintiff's breach of good faith and fair dealing claim because OBM's breach of contract claim subsumes its claim for breach of the duty of good faith and fair dealing. (Def.'s Mot. 10–11.) Plaintiff does not address breach of good faith and fair dealing in its brief in opposition. To the extent there is a separate claim outside the breach of contract claim, it is subsumed in the breach of contract claim and the separate claim is dismissed.

## D. Breach of Contract (Specific Performance)

In Ohio, specific performance is an appropriate remedy in a breach of contract case when the subject of the contract is unique so that other remedies, such as monetary damages, cannot return the party to the position it would have obtained if the contract was performed. Ohio courts most often grant specific performance for real estate transactions because land is unique but have also granted specific performance in other cases. *See Ruhlen v. Columbus First Realty Co.*, Case. No. 6–83–13, 1985 WL 9146, *6–7 (Ohio Ct. App. May 17, 1985) (emphasis omitted) (quoting 49 Ohio Jurisprudence 2d (1961) 571, Specific Performance, § k6) ("The purchaser in

a contract for the conveyance of land has a right to specific performance because of the unique character of realty.").[1] The party seeking specific performance bears the burden of proving that legal remedies, such as monetary damages, are inadequate. In the absence of such evidence a court must assume that a legal remedy exists and refuse to grant specific performance. *Gleason v. Gleason*, 64 Ohio App. 3d 667, 672, 582 N.E.2d 657, 661 (1991).

Here, the Amended Complaint alleges that "[t]he subject matter of the Agreement is unique" and "[t]here is no adequate remedy at law for OBM as a result of Kilroy's breach of the Agreement." (Am. Compl. ¶¶ 55, 62). According to Ohio appeals courts, Plaintiff adequately pleads a request for specific performance. *See, e.g.*, *Bono v. McCutcheon*, 2005-Ohio-299, ¶ 16, 159 Ohio App. 3d 571, 578, 824 N.E.2d 1013, 1019 ("By claiming that [the subject] is unique and that monetary damages would be inadequate, [plaintiff] has adequately pleaded a request for specific performance.").

KR argues that dismissal of the specific performance claim is warranted because the Agreement is for personal services, there is no mutuality of equitable remedy, and specific performance is impractical because the Agreement could last for an extended period of time. (Def.'s Mot. at 12.)

Ohio courts generally do not order specific performance of a personal service contract because individuals should not be forced to work for a certain employer. *Masetta v. Nat'l Bronze & Aluminum Foundry Co.*, 159 Ohio St. 306, 112 N.E.2d 15 (1953). Mutuality of the remedy of specific performance does not exist in such cases because just as the employer or principal cannot

---

[1] *See Stephan's Machine & Tool, Inc., v. D & H Machinery Consultants, Inc.,* 65 Ohio App.2d 197, 205, 417 N.E.2d 579, 583 (1979) (contract for delivery of unique, heavy-duty machine); *Smythe v. Prescott, Merrill, Turben & Co.,* 21 Ohio Misc. 154, 252 N.E.2d 524, 527 (Ohio Com.Pl.1969) (contract to exchange corporate stock); *Wellman Engineering Co. v. Calderon Automation, Inc.,* 29 Ohio O.O.2d 95, 102, 195 N.E.2d 568, 576 (Ohio App.1964) (licensing agreement giving licensee exclusive right to manufacture equipment for charging iron or steel-making furnaces with scrap).

force the employee or agent to work for him, the employee/agent cannot force the employer/principal to employ him. *Goldfarb v. The Robb Rep., Inc.*, 101 Ohio App.3d 134, 146, 655 N.E.2d 211 (10th Dist.1995). Furthermore, courts should not force unwilling parties to work with each other because the resulting relationship lacks "mutual confidence, loyalty and satisfaction" and "it would be inconvenient or even impossible for a court to conduct and supervise…specific performance of such a contract." *Hoffman Candy & Ice Cream Co. v. Dep't of Liquor Control,* 154 Ohio St. 357, 363, 96 N.E.2d 203 (1950). Thus, specific performance is "only available where there is no other adequate remedy at law." *Sorrell v. Micomonaco*, 2014-Ohio-1498, 89 N.E.3d 21 (12th Dist.); *Int'l Fid. Ins. Co. v. Vimas Painting Co.*, No. 2:07-CV-298, 2009 WL 2243769, at \*9 (S.D. Ohio July 23, 2009).

At this stage of the case, the pleadings alone do not determine whether the Agreement is a personal services contract and thus whether there is mutuality of equitable remedy.[2] Based on the allegations alone, the Court cannot determine whether KR chose to enter the Agreement with OBM because OBM's work was unique in the field or whether the purchase of services was without regard to the individual entity providing the service. Thus, for now, the Court finds Plaintiff has adequately pled a request for specific performance. Defendant's motion to dismiss the claim is denied.

### E. Promissory Estoppel

"Under Ohio's promissory estoppel doctrine, a promise that the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person

---

[2] Personal service contracts are those "in which the offeree is vested with discretion in accomplishing the assigned tasks because his skills, knowledge, experience and expertise are unique to the area and could not be duplicated by others not similarly qualified." *Smith v. Ohio State Univ. Hosps.,* 110 Ohio App.3d 412, 674 N.E.2d 721 (10th Dist. 1996). "[W]hereas, a purchased services contract indicates, "a purchase of services without regard to the specific individual to provide the service." *Id.*

and…[that] does induce such action or forbearance is binding if one can avoid injustice only by enforcing the promise." *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 503 (6th Cir. 2003) (alteration in original) (internal quotation marks and citation omitted).

Defendant argues that OBM's promissory estoppel claim must be dismissed because there cannot be a valid contract and an implied contract of promissory estoppel concurrently and OBM does not plead promissory estoppel in the alternative. (Def.'s Mot. at 14.) Indeed, Ohio courts have held that when "there is an express agreement between the parties, the quasi-contractual claims of breach of implied-in-fact contract and promissory estoppel are barred." *Williams*, 135 N.E.3d at 1268; *O'Neill v. Kemper Ins. Cos.,* 497 F.3d 578, 583 (6th Cir. 2007) ("In Ohio, [w]here the parties have an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover for promissory estoppel" (alteration in original) (internal quotation marks and citation omitted)); *accord Telxon Corp. v. Smart Media of Del., Inc.,* 9th Dist. Summit Nos. 22098, 22099, 2005-Ohio-4931.

However, Federal Rule of Civil Procedure 8(d)(3) specifically authorizes a plaintiff to plead alternative and inconsistent claims. As is the case here, Plaintiff may plead breach of contract and also promissory estoppel in the alternative if his breach of contract claim fails. *See, e.g.*, *Miami Valley Mobile Health Servs.*, 852 F. Supp. 2d at 939–40 (finding no basis for dismissing promissory estoppel and unjust enrichment claims while maintaining a breach of contract claim); *Concheck v. Barcroft*, No. 2:10-cv-656, 2011 WL 3359612, at *8 (S.D. Ohio Aug. 2, 2011); *Gucwa v. Lawley*, 731 F. App'x 408, 416 (6th Cir. 2018) (noting that plaintiffs do not need to explicitly plead claims in the alternative if the complaint's formulation provides a reasonable inference that the claims are pled in the alternative). The Amended Complaint provides a

reasonable inference that the contract and promissory estoppel claims are pled in the alternative. Therefore, Defendant's motion to dismiss the promissory estoppel claim is denied.

### F. Unjust Enrichment

A claim for unjust enrichment arises when a party retains money or benefits that, in justice and equity, belongs to another. *Alshaibani v. Litton Loan Servicing, LP*, 528 F. App'x 462, 465 (6th Cir. 2013) (citing *Liberty Mut. Ins. Co. v. Indus. Comm'n of Ohio,* 40 Ohio St.3d 109, 110, 532 N.E.2d 124 (1988). Unjust enrichment "operates in the absence of an express contract or a contract implied in fact." *Beatley v. Beatley*, 160 Ohio App.3d 600, 828 N.E.2d 180, 192–93 (2005) (quotations and citations omitted) (emphasis added); *Lehmkuhl v. ECR Corp.*, 5th Dist. Knox No. 06 CA 039, 2008-Ohio-6295 ("Ohio law is clear that a plaintiff may not recover under the theory of unjust enrichment or quasi-contract when an express contract covers the same subject.").

"To establish unjust enrichment, a plaintiff must demonstrate '(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment[.]'" *Wuliger v. Mfrs. Life Ins. Co. (USA)*, 567 F.3d 787, 799 (6th Cir. 2009) (quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984) (quotations and citations omitted)); *Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 858 (6th Cir. 2020).

Defendant incorrectly argues that Plaintiff's unjust enrichment claim should be dismissed because Plaintiff also argues the Agreement is an express contract. (Def.'s Mot. at 15.) Similar to the promissory estoppel claim above, Plaintiff may plead unjust enrichment in the alternative pursuant to Federal Rule of Civil procedure 8(a)(3) "when, for instance, there is a dispute between the parties as to whether an express agreement exists." *Solo v. UPS Co.*, 819 F.3d 788, 796 (6th

Cir. 2016) (citation omitted). Here, Plaintiff's breach of contract claim does not bar its unjust enrichment claim because there is a dispute about whether a contract exists. *See Teknol, Inc. v. Buechel*, No. C-3-98-416, 1999 U.S. Dist. LEXIS 22017, *8 (S.D. Ohio August 9, 1999) (holding that a plaintiff may set forth both [breach of contract and unjust enrichment] in his Complaint, as alternative theories").

Defendant also argues that there are insufficient allegations that KR knew that it received a benefit it was not entitled to receive. (Def.'s Mot. at 17.) The Amended Complaint states KR "had knowledge of the benefit OBM conferred and was aware of the time and effort contributed by OBM." (Am. Compl. ¶ 72.) This allegation is all that is required to plausibly allege an unjust enrichment harm claim. Defendant's motion to dismiss the unjust enrichment claim is denied.

## G. Declaratory Relief

A district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Miami Valley Mobile Health Servs.*, 852 F. Supp. 2d at 938 (quoting 28 U.S.C. § 2201(a)). While courts have discretion whether to entertain a declaratory judgment action, they typically "deny declaratory relief if an alternative remedy is better or more effective." *Grand Trunk W. R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)). Courts may consider: (1) whether "the judgment would settle the controversy," (2) whether it "would serve a useful purpose in clarifying" the parties' legal relations, (3) whether a party seeks the relief out of gamesmanship, (4) whether declaratory relief would harm state-federal comity, and (5) whether a "better or more effective" remedy exists. *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 813 (6th Cir. 2004).

Here, Plaintiff seeks "[a] speedy determination as to whether OBM has the sole and exclusive right to manage and control the operations of any and all signs Kilroy is awarded and/or

permitted to operate for advertising purposes at The Sunset is necessary to preserve the rights of the parties." (Am. Compl. ¶ 42.) The Court finds that declaratory relief may serve a useful purpose in clarifying the parties' legal relations and that discovery is beneficial to determine the need for declaratory judgment. Based on Plaintiff's allegations, declaratory judgment would "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding" by determining whether KR is obligated to allow OBM to operate and manage Signs and the Sunset. *See* Ohio Rev. Code § 2721.07; *Aetna Casualty Surety Co. v. Sunshine Corp.,* 74 F.3d 685, 687 (6th Cir. 1997) (quoting *Grand Trunk W. R.*, 746 F.2d at 325). Additionally, even though monetary damages may be a more effective remedy, declaratory judgment is not exclusive to other claims and "may be considered independently of whether other forms of relief are appropriate." *Powell v. McCormack*, 395 U.S. 486, 499, 518 (1969). At this early stage, OBM sufficiently pleads its claim for declaratory relief. Defendant's motion to dismiss the claim is denied.

## IV. CONCLUSION

For the reasons above, Defendant KR's Motion to Dismiss (ECF No. 12) is **GRANTED in part and DENIED in part**. This case remains open.

**IT IS SO ORDERED.**

7/6/2022                              s/Edmund A. Sargus, Jr.
**DATE**                             **EDMUND A. SARGUS, JR.**
                                     **UNITED STATES DISTRICT JUDGE**